Sarit Shmulevitz, Esq.
Shmulevitz Law
155 West 68th Street, #2126
New York, NY 10023
Telephone: (917) 239-8397
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------

In re:

                                        Chapter 11

Aaron and Karin Tzamarot,             Case No.: 09-24277 (RDD)

                    Debtors.

------------------------------------------------------------------

## APPLICATION BY THE DEBTORS FOR AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF SHMULEVITZ LAW AS COUNSEL FOR THE DEBTORS *NUNC PRO TUNC* TO MARCH 26, 2011 THROUGH NOVEMBER 20, 2012

       The above-captioned debtors (the "Debtors") file this application (the "Application") seeking entry of an order, in substantially the form attached hereto as Exhibit B, pursuant to section 327(a) of chapter 11 of title 11 of the United States Code, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "Bankruptcy Code") and Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtors' retention and employment of Shmulevitz Law ("Shmulevitz Law") as counsel to the Debtors, *nunc pro tunc* to March 26, 2011 through November 20, 2012. In support of this Application, the Debtors submit the Declaration of Sarit Shmulevitz (the "Shmulevitz Declaration"), attached hereto as Exhibit A, and respectfully state as follows:

### JURISDICTION

1.     This Court has jurisdiction over this Application under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Application in this District is proper under 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2.  On or about December 6, 2009, the Debtors commenced this case by filing a voluntary petition for relief.  The bankruptcy was a culmination of a long dispute with Cold Stone Creamery Inc. and other parties that left the Debtors financially devastated.  At the time of their filing, the Debtors were represented by Mr. Lawrence Morrison who was then affiliated with the law firm Meister, Seelig and Fine LLP[1].  Ms. Shmulevitz, at the time an associate at the law firm of Meister, Seelig and Fine, also worked on the case. On or about March 31, 2011, Mr. Morrison filed a Motion to Withdraw as Attorneys for the Debtors, and this Court granted his Motion on April 6, 2011.

3.  At the Debtors' request, Ms. Shmulevitz continued to work with the Debtors after former counsel withdrew.  On or about March 26, 2011, the Debtors and Shmulevitz Law entered into an Agreement to Provide Legal Services (the "Agreement").  The Scope of Agreement specified that Shmulevitz Law would "continue [] the bankruptcy case including status and court conferences, negotiation with the trustee, filing operating statements, and filing a plan of reorganization." The Agreement provided that the matter would not include an adversary proceeding against Kahala/Coldstone or any other entity.  Pursuant to this Agreement, the Debtors agreed that a $10,000 retainer would be paid "by Client's third party", and that after the retainer is exhausted, additional fees would be paid.  The Debtors agreed to pay an hourly rate of $300.  Shmulevitz Law received a $10,000 retainer pursuant to this Agreement.  On or about April 23, 2011, the Debtors e-mailed Shmulevitz Law and asked for a rate reduction to $250/hr, and this reduction was approved based upon the Debtors' financial condition.

---

[1] Mr. Morrison has since left the employ of Meister Seelig and Fine, and upon information and belief, operates as a solo practitioner.

4.    On or about April 28, 2011, the Debtors and Shmulevitz Law entered into a second Agreement (the "Second Agreement") pursuant to which Shmulevitz Law undertook to prepare a letter to a potential defendant in exchange for $600. The Second Agreement stated that Shmulevitz Law would not engage in any litigation in connection with this matter. The Agreement also specifically stated that the funds would be "paid from third party funds received from Client's mother living in Israel." Shmulevitz Law received $600 pursuant to this Second Agreement.

5.    The retention of Shmulevitz Law will enable the Debtors to continue their litigation against ColdsStone et al. and other tasks as detailed below.

## RELIEF REQUESTED

6.    By this Application, the Debtors request entry of an order pursuant to Bankruptcy Code Section 327 authorizing them to employ and retain Shmulevitz Law, *nunc pro tunc* to March 26, 2011 through November 20, 2012 under the terms described below.

## BASIS FOR RELIEF

7.    The Debtors retained Shmulevitz Law in connection with their efforts to respond to their financial circumstances, including, among other things, to assist them with their case against Coldstone *et al*.

8.    The Debtors selected Shmulevitz Law as their restructuring counsel because of the Firm's experience and knowledge in the field of debtors' and creditors' rights and business reorganizations under Chapter 11 of the Bankruptcy Code, and because Ms. Shmulevitz was familiar with the Debtors' case and circumstances. Ms. Shmulevitz has approximately 12 years of experience in bankruptcy law, and practiced with Sidley and Austin, LLP as well as Brown Rudnick LLP, in their New York offices, before launching Shmulevitz Law. In addition, Ms.

Shmulevitz worked on the Debtors' case while the Debtors were represented by Meister Seelig and Fine, and developed a good working relationship with the Debtors.

9.   Since entering the Engagement Agreement, the Debtors and Shmulevitz Law have worked closely on the Debtors' case.  In doing so, Shmulevitz Law has become familiar with the Debtors' legal struggles.  Shmulevitz Law has provided advice and assisted the Debtors in all aspects of their restructuring efforts, and the preparation and prosecution in connection with disputes against ColdStone Creamery et al., former counsel, and other parties as described below.

## SERVICES RENDERED

10.  Among other things, Shmulevitz Law has:

(a)  drafted documents and pleadings necessary for the prosecution of the case to date;

(b)  attended meetings and negotiated with representatives of creditors and other parties in interest, and advised and consulted on the conduct of cases, including all the legal and administrative requirements of operating in chapter 11;

(c)  interfaced with all parties in the Coldstone litigation;

(d)  took necessary action to protect and preserve the Debtors' estate;

(e)  prepared, on behalf of the Debtors, motions, applications, reports and papers necessary to the administration of the estates;

(f)  performed other necessary legal services and provided other necessary legal advice to the Debtors in connection with these chapter 11 cases; and

(g)  appeared before this Court and the United States Trustee with respect to the interests of the Debtors' estates.

11. It was necessary and essential that the Debtors employed attorneys to render the foregoing professional services.

## DISINTERESTEDNESS OF PROFESSIONALS

12. To the best of the Debtors' knowledge, and except as otherwise set forth in this Application and in the accompanying Declaration of Shmulevitz Law, the members of Shmulevitz Law (a) do not have any connection with any of the Chapter 11 Trustee, the Debtors, their affiliates, their creditors, or any other parties in interest, or their respective attorneys and accountants, the United States Trustee for Region 2 or any person employed in the office of the same, or any judge in the United States Bankruptcy Court for the Southern District of New York or any other person employed in the offices of the same, (b) are "disinterested persons," as that term is defined in Bankruptcy Code section 101(14), as modified by Bankruptcy Code section 1107(b), and (c) do not hold or represent any interests adverse to the estate.

13. The Applicants understand that except as otherwise set forth in the Shmulevitz Declaration:

  (a) Neither Shmulevitz Law or Sarit Shmulevitz holds or represents an interest adverse to the Debtors' estate;

  (b) Neither Shmulevitz Law nor Sarit Shmulevitz is or was a creditor or an insider of the Debtors, except Shmulevitz Law previously rendered legal services to the Debtors for which it seeks compensation as disclosed below;

  (c) Neither Shmulevitz Law nor Sarit Shmulevitz is or was within two years before the Petition Date, a director, officer, or employee of the Debtors; and

  (d) Shmulevitz Law does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security creditors, by reason of any direct or indirect relationship to, connection with, or interest in the Debtors, or for any reason.

14. In view of the following, the Applicants believe that Shmulevitz Law is a "disinterested person" within the meaning of the Bankruptcy Code section 101(14), as modified by Bankruptcy Code section 1107(b).

15.  Shmulevitz Law has informed the Applicants that during its involvement in these cases, Shmulevitz Law will continue to conduct periodic conflicts analysis to determine whether it is performing or has performed services for any significant parties in interest in this case, and will promptly update the Shmulevitz Declaration to disclose any material developments regarding the services described above.

## PROFESSIONAL COMPENSATION

16.  Shmulevitz Law will accept as compensation for its work during the chapter 11 case such sums as may be allowed by the Court on the basis of professional time spent, the rates charged for such services, the necessity of such services to the administration of the estate, the reasonableness of time within which the services were performed in relation to the results achieved, and the complexity, importance, and nature of the problems, issues or tasks addressed in this case.

17. Shmulevitz Law's fees for professional services are based upon hourly rates.  Shmulevitz Law's hourly rates are in the range of $250-$350/hr, and pursuant to their Agreement, Shmulevitz Law has agreed to reduce its compensation to $250/hr.[2]

18. At the time the Debtors retained Shmulevitz Law, they delivered to Shmulevitz Law a $10,600 retainer to be held as on account cash for the advance payment of professional fees and expenses incurred and charged by Shmulevitz Law (the "Retainer").

19. Consistent with the Firm's policy with respect to its other clients, Shmulevitz Law agrees to waive costs already incurred for photocopying, electronic data management services, including scanning and document images, travel-related expenses to the Courthouse, business meals and similar fees.  Shmulevitz Law has conducted and will continue to conduct all of its

---

[2] As compared with approximately $500/hr that Ms. Shmulevitz was billed out at whilst with Brown Rudnick LLP.

computerized research at the premises of the City Bar Association so as to minimize costs to its clients. Shmulevitz Law has charged and will continue to charge for postage.

20. Other than as set forth above and in the Shmulevitz Declaration, no arrangement is proposed between the Applicants and Shmulevitz Law for compensation to be paid in this case. Shmulevitz Law has no agreement with any other entity to share any compensation received, nor will any be made, except as permitted under Bankruptcy Code section 504(b)(1).

21. The work undertaken by Shmulevitz Law since March 26, 2011 has greatly assisted the Debtors. The Applicants submit that the engagement and retention of Shmulevitz Law on the terms and conditions set forth herein is necessary and in the best interests of the Debtors, their estates, and their creditors and should be approved.

## NOTICE

22. Notice of this Application has been provided to: (a) the United States Trustee for the Southern District of New York and (b) all other persons requesting notice in this Case. The Applicants submit that, under the circumstances, no other or further notice is necessary.

## NO PRIOR REQUEST

23.    No previous request for the relief sought herein has been made to this Court or to any other Court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request an entry of an order, in substantially the form attached hereto as Exhibit B, (a) authorizing the Debtors to employ and retain Shmulevitz Law as Counsel, *nunc pro tunc* to May 31, 2011, for the Debtors and (b) granting such other further relief as is just and proper.

_____
Sarit Shmulevitz

EXHIBIT "A"

Sarit Shmulevitz, Esq.
Shmulevitz Law
155 West 68th Street, #2126
New York, NY 10023
Telephone: (917) 239-8397
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------

In re:

Aaron and Karin Tzamarot,

                                    Chapter 11
                                    Case No.: 09-24277 (RDD)


                        Debtors.
--------------------------------------------------------------------

## DECLARATION OF
## SHMULEVITZ LAW
## TO ACCOMPANY DEBTORS'
## RETENTION APPLICATION


STATE OF NEW YORK       )
                        ) ss.:
NEW YORK COUNTY         )


Sarit Shmulevitz, being duly sworn, deposes and says:

1. I am a Partner at Shmulevitz Law ("Shmulevitz Law") and have acted on behalf of the Debtors since approximately March 26, 2011 through the present time.

2. At the time of their bankruptcy filing, the Debtors were represented by Mr. Lawrence Morrison who was then affiliated with the law firm Meister, Seelig and Fine LLP, as well as Richard Rosen from the Richard L. Rosen Law Firm PLLC. At the time, I was an associate at the law firm of Meister, Seelig and Fine, and assisted with the case in accordance with Mr. Morrison's directions. On or about March 31, 2011, Mr. Morrison filed a Motion to Withdraw as Attorneys for the Debtors, and this Court granted his Motion on April 6, 2011.

3.    At the Debtors' request, I continued to work with the Debtors after former counsel withdrew.  I explained to the Debtors that I was willing to step in and help them with their case, but that I could not (due to my lack of personnel resources, and the Debtors' inability to pay a higher retainer) undertake any major litigation, and that they would need to retain special counsel to oversee the Coldstone matter.  On or about March 26, 2011, the Debtors and Shmulevitz Law entered into an Agreement to Provide Legal Services (the "Agreement").  The Scope of Agreement specified that Shmulevitz Law would "continue [] the bankruptcy case including status and court conferences, negotiation with the trustee, filing operating statements, and filing a plan of reorganization." The Agreement provided that the matter would not include an adversary proceeding against Kahala/Coldstone or any other entity.  Pursuant to this Agreement, the Debtors agreed (i) to pay an hourly rate of $300; (ii) that a $10,000 retainer would be paid "by Client's third party", and (iii) that after the retainer is exhausted, additional fees would be paid. Shmulevitz Law received a $10,000 retainer (by check) pursuant to this Agreement.  On or about April 23, 2011, the Debtors e-mailed Shmulevitz Law and asked for a rate reduction to $250/hr, and this reduction was approved based upon the Debtors' financial condition.  A copy of the Agreement together with relevant e-mails is attached herein as Exhibit 1.

4.    On or about April 28, 2011, the Debtors and Shmulevitz Law entered into a second Agreement (the "Second Agreement") pursuant to which Shmulevitz Law undertook to research and prepare a detailed letter to Mr. Peter Alexis in exchange for $600.  The Second Agreement stated that Shmulevitz Law would not engage in any litigation in connection with this matter. The Agreement also specifically stated that the funds would be "paid from third party funds received from Client's mother living in Israel."  Shmulevitz Law received $600 pursuant to this Second Agreement. A copy of the Second Agreement is attached herein as Exhibit 2.

5.  Since March 26, 2011 Shmulevitz Law has worked vigorously to defend the Debtor on various fronts.

### RELIEF REQUESTED

6.  By this Application, Shmulevitz Law requests entry of an order pursuant to Bankruptcy Code Section 327 authorizing the Debtors' employment and retention of Shmulevitz Law, *nunc pro tunc* to March 26, 2011through November 20, 2012 under the terms described below.

### BASIS FOR RELIEF

7.  The Debtors retained Shmulevitz Law in connection with their efforts to respond to their financial circumstances, including, among other things, to assist them with their case against Coldstone *et al*.

8.  The Debtors selected Shmulevitz Law as their restructuring counsel because of the Firm's experience and knowledge in the field of debtors' and creditors' rights and business reorganizations under Chapter 11 of the Bankruptcy Code, and because Ms. Shmulevitz was familiar with the Debtors' case and circumstances.  Ms. Shmulevitz has approximately 12 years of experience in bankruptcy law, and practiced with Sidley and Austin, LLP as well as Brown Rudnick LLP, in their New York offices, before launching Shmulevitz Law.  In addition, Ms. Shmulevitz worked on the Debtors' case while the Debtors were represented by Meister Seelig and Fine, and developed a good working relationship with the Debtors.

9.  Since entering the Engagement Agreement, the Debtors and Shmulevitz Law have worked closely on the Debtors' case.  In doing so, Shmulevitz Law has become familiar with the Debtors' legal struggles.  Shmulevitz Law has provided advice and assisted the Debtors in all aspects of their restructuring efforts, and the preparation and prosecution in connection with

disputes against ColdStone Creamery et al., former counsel, and other parties as described below.

## SERVICES RENDERED

10.  Among other things, Shmulevitz Law has:

(a) drafted documents and pleadings necessary for the prosecution of the case to date;

(b) attended meetings and negotiated with representatives of creditors and other parties in interest, and advised and consulted on the conduct of cases, including all the legal and administrative requirements of operating in chapter 11;

(c) interfaced with all parties in the Coldstone litigation;

(d) took necessary action to protect and preserve the Debtors' estate;

(e) prepared, on behalf of the Debtors, motions, applications, reports and papers necessary to the administration of the estates;

(f) performed other necessary legal services and provided other necessary legal advice to the Debtors in connection with these chapter 11 cases; and

(g) appeared before this Court and the United States Trustee with respect to the interests of the Debtors' estates.

11. It was necessary and essential that the Debtors employed attorneys to render the foregoing professional services.

## DISINTERESTEDNESS OF PROFESSIONALS

12. To the best of my knowledge, Shmulevitz Law (a) does not have any connection with any of the Chapter 11 Trustee, the Debtors, their affiliates, their creditors, or any other parties in interest, or their respective attorneys and accountants, the United States Trustee for Region 2 or any person employed in the office of the same, or any judge in the United States Bankruptcy Court for the Southern District of New York or any other person employed in the offices of the

same, (b) is a "disinterested person" as that term is defined in Bankruptcy Code section 101(14), as modified by Bankruptcy Code section 1107(b), and (c) does not hold or represent any interests adverse to the estate.

13. In addition:

    (a) Neither Shmulevitz Law or Sarit Shmulevitz holds or represents an interest adverse to the Debtors' estate;

    (b) Neither Shmulevitz Law nor Sarit Shmulevitz is or was a creditor or an insider of the Debtors, except Shmulevitz Law previously rendered legal services to the Debtors for which it seeks compensation as disclosed in its Fee Application;

    (c) Neither Shmulevitz Law nor Sarit Shmulevitz is or was within two years before the Petition Date, a director, officer, or employee of the Debtors; and

    (d) Shmulevitz Law does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security creditors, by reason of any direct or indirect relationship to, connection with, or interest in the Debtors, or for any reason.

14. In view of the following, Shmulevitz Law is a "disinterested person" within the meaning of the Bankruptcy Code section 101(14), as modified by Bankruptcy Code section 1107(b).

## PROFESSIONAL COMPENSATION

15. Shmulevitz Law will accept as compensation for its work during the chapter 11 case such sums as may be allowed by the Court on the basis of professional time spent, the rates charged for such services, the necessity of such services to the administration of the estate, the reasonableness of time within which the services were performed in relation to the results achieved, and the complexity, importance, and nature of the problems, issues or tasks addressed in this case.

16. Shmulevitz Law's fees for professional services are based upon hourly rates. Shmulevitz Law's hourly rates are in the range of $250-$350/hr, and pursuant to their Agreement, Shmulevitz Law has agreed to reduce its compensation to $250/hr.[1]

17. At the time the Debtors retained Shmulevitz Law, they delivered to Shmulevitz Law a $10,600 retainer to be held as on account cash for the advance payment of professional fees and expenses incurred and charged by Shmulevitz Law (the "Retainer").

18. Consistent with the Firm's policy with respect to its other clients, Shmulevitz Law agrees to waive costs already incurred for photocopying, electronic data management services, including scanning and document images, travel-related expenses to the Courthouse, business meals and similar fees. Shmulevitz Law has conducted and will continue to conduct all of its computerized research at the premises of the City Bar Association so as to minimize costs to its clients. Shmulevitz Law has charged and will continue to charge for postage.

19. Other than as set forth above and in the Shmulevitz Declaration, no arrangement is proposed between the Applicants and Shmulevitz Law for compensation to be paid in this case. Shmulevitz Law has no agreement with any other entity to share any compensation received, nor will any be made, except as permitted under Bankruptcy Code section 504(b)(1).

20. The work undertaken by Shmulevitz Law since March 26, 2011 has greatly assisted the Debtors. Shmulevitz Law submits that the engagement and retention of Shmulevitz Law on the terms and conditions set forth herein has been necessary and in the best interests of the Debtors, their estates, and their creditors and should be approved.

---

[1] As compared with approximately $500/hr that Ms. Shmulevitz was billed out at whilst with Brown Rudnick LLP.

## NOTICE

21. Notice of this Application has been provided to: (a) the United States Trustee for the Southern District of New York and (b) all other persons requesting notice in this Case and (c) the Debtors. The Applicants submit that, under the circumstances, no other or further notice is necessary.

## NO PRIOR REQUEST

22. No previous request for the relief sought herein has been made to this Court or to any other Court.

## CONCLUSION

**WHEREFORE**, the Debtors respectfully request an entry of an order, in substantially the form attached hereto as Exhibit 3, (a) authorizing the Debtors to employ and retain Shmulevitz Law as Counsel, *nunc pro tunc* to March 26, 2011, for the Debtors and (b) granting such other further relief as is just and proper.

Sarit Shmulevitz

EXHIBIT "1"

## AGREEMENT TO PROVIDE LEGAL SERVICES

**THIS AGREEMENT** is entered into by and between Aaron and Karin Tzamarot ("Client") and Sarit Shmulevitz, Esq. ("Counsel").

### I.SCOPE OF ENGAGEMENT

A. Matter Involved

Client has engaged Counsel to undertake the legal representation of Client in a matter (the "Matter") involving the continuation of their bankruptcy case including status and court conferences, negotiation with the trustee, filing operating statements, and filing a plan of reorganization. This matter will not include an adversary proceeding against Kahala/Coldstone, or any other entity. If Client determines to file an adversary proceeding against Kahala/Coldstone then a separate engagement letter is required.

B. Counsel Functions

By the terms of this Agreement, Counsel will perform the following legal services relative to the Matter:

1. Initial review of documents;

2. Attend status conferences, and 341 hearing;

3. File bankruptcy-related documents; and

4. Settlement, including negotiations and functions connected therewith.

Counsel will not prepare or be involved in an appeal of any decision made in this case absent a separate agreement. Counsel will not perform legal services other than those specified above. Specifically, Counsel will not commence an adversary proceeding against Kahala/Coldstone absent a separate agreement.

C. Client's Functions

Client agrees to perform the following functions:

1. To pay Counsel for the performance of such legal services, and to pay for all expenses incurred in connection therewith, as specified in Section II below;

2. To cooperate fully with Counsel and to provide all information known or available to Client which may aid Counsel in representing Client in this matter;

3. To make himself available for meetings, depositions, and court proceedings, including trial; and

4. To retain expert witnesses as suggested by Counsel for the purpose of testifying at trial.

1

## II. LEGAL FEES AND EXPENSES

A.  Method of Determining Fees

Client and Counsel agree that the following method is to be used for determining the proper amount of legal fees:

Client agrees to pay to Counsel at a rate of $300 per hour for Counsel's time in representing Client in this Matter.  A ten-thousand ($10,000) retainer will be paid by Client's third party, and Counsel will hold this money in trust and will apply these monies towards any invoices rendered to Client in this Matter.  After this retainer is exhausted, additional fees will be paid monthly by Client promptly after Counsel sends an invoice explaining the services provided to Client.  The balance of the retainer, if any, will be returned to Client if unused when the representation is over.

If Client fails to perform the Client Functions as specified above in Section I(C), then Client will be responsible for paying Counsel the legal fees incurred in representing Clients in this Matter at a rate of $300 per hour. Client is obligated to pay Counsel the amount incurred within 30 days from receipt of an invoice.

In addition to the legal fees, Client agrees to pay any out-of-pocket expenses, such as filing fees to be paid to the court, cost of making copies (at $0.10 per page), and the actual cost of postage. In addition, Client must promptly forward any accounting expenses associated with operating statements, and trustee fees.

B.  Fee Dispute

In the event of a dispute regarding fees and expenses, Client understands that she has the right to seek arbitration of the matter pursuant to the Rules and Law of the State of New York.

## III. GENERAL MATTERS

A.  Termination of Representation

The relationship established by this Agreement is subject to termination only as follows:

1.  Counsel reserves the right to withdraw from this Matter if Client fails to honor this Agreement or for any just reason as permitted or required under the Code of Professional Responsibility or as permitted by the Rules of Courts of the State of New York.

2.  Notification of withdrawal shall be made in writing to the Client.  In the event of such withdrawal, Client agrees to promptly pay Counsel the reasonable value of all services rendered by Counsel and all other fees, charges, and expenses incurred pursuant to Section II.A. of this Agreement prior to the date of such withdrawal.

3.  Client reserves the right to terminate the representation for cause if Counsel fails to honor this Agreement.  Notification of the termination shall be made in writing to Counsel.  In the event of any such termination, Client shall promptly reimburse Counsel for all fees, charges, and expenses incurred pursuant to Section II.A. of this Agreement prior to the date of such termination.

2

4. Client further reserves the right to terminate the representation without cause, and shall notify Counsel in writing of any such termination. In the event of any such termination, Client agrees to promptly pay Counsel for all services rendered by Counsel at Counsel's hourly rate, and all other fees, charges, and expenses incurred pursuant to Section II.A. of this Agreement prior to the date of such termination.

B. <u>Effort and Outcome</u>

Counsel agrees to use best efforts in representing Client in this Matter; however, Client acknowledges that Counsel has given no assurances regarding the outcome of this Matter. Client acknowledges that he received and read the Statement of Client's Rights annexed to this Agreement.

C. <u>Complete Integration; Binding Upon All Parties</u>

This Agreement contains the entire agreement between Client and Counsel regarding this Matter and the fees, charges, and expenses to be paid relative thereto. This Agreement shall not be modified except by written agreement signed by Client and Counsel and their respective heirs, executors, legal representatives, and successors.

IN WITNESS WHEROF, the parties hereto have executed this Agreement as of the date and year here written.

D. <u>Signatures</u>

You (Client) have read this Agreement. Counsel has answered all your questions and fully explained this Agreement to your complete satisfaction. You (Client) have been given a signed copy of this Agreement.

This Agreement is not binding until and unless both Client and Counsel have signed this Agreement and Client has paid the retainer listed above.

_____
Aaron Tzamarot
Client

_____
Karin Tzamarot
Client

_____
Sarit Shmulevitz, Esq
Counsel

March 26, 2011

3

From: **ATzamarot** (atzamarot@aol.com)

Sent:  Sat 4/23/11 4:12 PM

To:     sshmulevitz@hotmail.com; atzamarot@aol.com

Your propose rates and services from Dec. 15, 2010 below include $250 per hour rate.


Thank you. Aaron


From: **ATzamarot** (atzamarot@aol.com)
Sent:  Fri 4/08/11 2:02 PM
To:     atzamarot@aol.com; ket2116@mail.cumc.columbia.edu; shmulevitz@shmulevitzlaw.com
Please update and cash your check.

Thanks.

EXHIBIT "2"

**AGREEMENT TO PROVIDE LEGAL SERVICES**

**THIS AGREEMENT** is entered into by and between Aaron Tzamarot ("Client") and Sarit Shmulevitz, Esq. ("Counsel").

I.SCOPE OF ENGAGEMENT

A.  Matter Involved

Client has engaged Counsel to undertake the legal representation of Client in a matter (the "Matter") involving the preparation of a letter concerning unreturned credit for a vehicle, and related discussions with adversary. UNDER NO CIRCUMSTANCES, WILL COUNSEL ENGAGE IN LITIGATION UNDER THIS ENGAGEMENT.  THIS ENGAGEMENT IS LIMITED TO WRITING A LETTER AND FOLLOW-UP.  TO THE EXTENT CLIENT WANTS TO COMMENCE LITIGATION, A SEPARATE ENGAGEMENT LETTER AND FEE WOULD BE REQUIRED.

B.  Counsel Functions

By the terms of this Agreement, Counsel will perform the following legal services relative to the Matter:

1.  Initial review of documents;

2.  Prepare letter;  and

3.  Follow-up (no litigation, merely verbal and/or letter follow up threatening litigation for which a separate agreement and fee would be required).

Counsel will not perform legal services other than those specified above.

C.  Client's Functions

Client agrees to perform the following functions:

1.  To pay Counsel for the performance of such legal services, and to pay for all expenses incurred in connection therewith, as specified in Section II below; and

2.  To cooperate fully with Counsel and to provide all information known or available to Client which may aid Counsel in representing Client in this matter;

II. LEGAL FEES AND EXPENSES

A.  Method of Determining Fees

Client and Counsel agree that the following method is to be used for determining the proper amount of legal fees:

Client agrees to pay to Counsel a flat fee of $600 for this Matter to be paid from third party funds received from Client's mother living in Israel.

1

In addition to the legal fees, Client agrees to pay any out-of-pocket expenses, such as cost of making copies (at $0.10 per page), and the actual cost of postage.

B. Fee Dispute

In the event of a dispute regarding fees and expenses, Client understands that he has the right to seek arbitration of the matter pursuant to the Rules and Law of the State of New York.

## III. GENERAL MATTERS

A. Termination of Representation

The relationship established by this Agreement is subject to termination only as follows:

1. Counsel reserves the right to withdraw from this Matter if Client fails to honor this Agreement or for any just reason as permitted or required under the Code of Professional Responsibility or as permitted by the Rules of Courts of the State of New York.

2. Notification of withdrawal shall be made in writing to the Client. In the event of such withdrawal, Client agrees to promptly pay Counsel the reasonable value of all services rendered by Counsel and all other fees, charges, and expenses incurred pursuant to Section II.A. of this Agreement prior to the date of such withdrawal.

3. Client reserves the right to terminate the representation for cause if Counsel fails to honor this Agreement. Notification of the termination shall be made in writing to Counsel. In the event of any such termination, Client shall promptly reimburse Counsel for all fees, charges, and expenses incurred pursuant to Section II.A. of this Agreement prior to the date of such termination.

4. Client further reserves the right to terminate the representation without cause, and shall notify Counsel in writing of any such termination. In the event of any such termination, Client agrees to promptly pay Counsel for all services rendered by Counsel at Counsel's hourly rate, and all other fees, charges, and expenses incurred pursuant to Section II.A. of this Agreement prior to the date of such termination.

B. Effort and Outcome

Counsel agrees to use best efforts in representing Client in this Matter; however, Client acknowledges that Counsel has given no assurances regarding the outcome of this Matter. Client acknowledges that she received and read the Statement of Client's Rights annexed to this Agreement.

C. Complete Integration; Binding Upon All Parties

This Agreement contains the entire agreement between Client and Counsel regarding this Matter and the fees, charges, and expenses to be paid relative thereto. This Agreement shall not be modified except by written agreement signed by Client and Counsel and their respective heirs, executors, legal representatives, and successors.

IN WITNESS WHEROF, the parties hereto have executed this Agreement as of the date and year here written.

2

D. Signatures

You (Client) have read this Agreement. Counsel has answered all your questions and fully explained this Agreement to your complete satisfaction. You (Client) have been given a signed copy of this Agreement.

This Agreement is not binding until and unless both Client and Counsel have signed this Agreement and Client has paid the retainer listed above.

_____
Aaron Tzanarot
Client

_____
Sarit Shmulevitz, Esq
Counsel

3

EXHIBIT "B"

## PROPOSED ORDER

--------------------------------------------------------------------

In re:

                                Chapter 11

Aaron and Karin Tzamarot,           Case No.: 09-24277 (RDD)

                 Debtors.

--------------------------------------------------------------------

### ORDER AUTHORIZING THE EMPLOYMENT
### AND RETENTION OF SHMULEVITZ LAW, *NUNC PRO TUNC* TO
### MARCH 26, 2011 THROUGH NOVEMBER 20, 2012 FOR THE DEBTORS

Upon the application (the "Application") of the above-captioned Debtors for entry of an order ("Order"), pursuant to section 327(a) of the Bankruptcy Code and Rule 2014(a) of the Bankruptcy Rules, authorizing the Debtors to employ Shmulevitz Law ("Shmulevitz LaW") as their bankruptcy counsel; upon the Declaration of Sarit Shmulevitz (the "Shmulevitz Declaration"); the Court being satisfied based on the representations made in the Application and the Shmulevitz Declaration that Shmulevitz Law represents no interest adverse to the Debtors' estates with respect to the matters upon which he is to be engaged; that Shmulevitz Law and Sarit Shmulevitz are disinterested persons as that term is defined under section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code; it appearing that the relief requested is in the best interests of the Debtors' estates; it appearing that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; it appearing that this proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); it appearing that venue of this proceeding and this Application in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; it appearing that notice of this Application and the opportunity for a hearing on this Application was appropriate under the circumstances and that no other or further notice need be given; and after due deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED**, that the Application is hereby granted, and it is further

**ORDERED**, that in accordance with section 327(a) of Bankruptcy Code and Bankruptcy Rule 2014(a), and subject to the terms of this Interim Order, the Debtors are authorized to employ and retain Shmulevitz Law as their bankruptcy counsel *nunc pro tunc* to March 26, 2011 through November 20, 2012.

**ORDERED**, that Steinberg shall be compensated in accordance with the standards and procedures set forth in sections 330 and 331 of the Bankruptcy Code and all applicable Bankruptcy Rules, Local Rules for the United States Banptcy Court for the Southern District of New York (the "Local Rules"), guidelines promulgated by the Office of the United States Trustee, and further orders of the Court; and it is further

**ORDERED**, that the requirement under Local Rule 9013-1(b) that any motion or other request for relief be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Application or otherwise waived; and it is further ORDERED, that this Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

Dated: _____ 2012


_____
The Honorable Robert D. Drain
United States Bankruptcy Judge