UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
x- - - - - - - - - - - - - - -x
IN THE MATTER OF:               . Case No. 09-24277-rdd
                                .
KARIN TZAMAROT and              . 300 Quarropas Street
AARON TZAMAROT,                 . White Plains, New York
                                .
         Debtors                .
                                . November 20, 2012
- - - - - - - - - - - - - - - -.
KARIN TZAMAROT and              .
AARON TZAMAROT,                 .
                                .
         Plaintiffs             .
                                .
         -vs-                   .
                                .  Adv. No. 12-08285
ERCNY, LLC, ET AL,              .
                                .
         Defendants             .
- - - - - - - - - - - - - - - -.
KARIN TZAMAROT and              .
AARON TZAMAROT,                 .
                                .
         Plaintiffs             .
                                .
         -vs-                   .
                                .  Adv. No. 11-08362
COLD STONE CREAMERY, INC.,ET AL.
                                .
         Defendants             .
- - - - - - - - - - - - - - - -.
```

TRANSCRIPT OF MOTION TO AMEND AND
MOTION FOR SUBSTITUTION OF COUNSEL
BEFORE THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**TERRY GRIBBEN'S TRANSCRIPTION SERVICE**
**27 Beach Road, Unit 4**
**Monmouth Beach, NJ  07750**
**800 603-6212**
**(732) 263-0044    Fax No. 732-263-0075**
www.tgribbentranscription.com

```
 1    APPEARANCES:

 2    For Debtor:              SARIT SHMULEVITZ, ESQ.

 3

 4    For Debtor:              PAUL STEINBERG, ESQ.

 5                             14803 Hillside Ave.

 6                             Jamaica,  NY   11435

 7

 8    New counsel for Debtor:  HARVEY TIRELLI & CUSHIER

 9                             BY:  LINDA M. TIRELLI, ESQ.

10                             50 Main Street, 3rd Floor

11                             White Plains, NY  10606

12

13    For Cold Stone Creamery: WILLIAM FRAME, ESQ.

14

15    For Craig Gruber:        FURMAN CORNFIELD & BRENNAN

16                             BY:  R. EVON IDAHOSA, ESQ.

17                             61 Broadway, 26th Floor

18                             New York,  NY  10006

19

20    U.S. Trustee:            UNITED STATES TRUSTEES OFFICE

21                             BY RICHARD C. MORRISSEY, ESQ.

22                             33 Whitehall Street, 21st Floor

23                             New York, NY 10004

24

25
```

1   Amended Complaint against all defendant with Motion for Leave

2   to Amend.

3

4   Memorandum of Law in Opposition to the Motion for Leave to

5   Amend the Adversary Proceeding in this Action.

6

7   Opposition  to Plaintiff's Motion for Leave to Amend.

8

9   Affidavit in Support of Opposition to Plaintiff's Motion for

10  Leave to Amend the Complaint.

11

12  Application to Employ Paul Steinberg as Special Litigation

13  Counsel.

14

15  Amended Application to Employ Paul Steinberg as Special

16  Counsel.

17

18  Motion to Authorize Termination of Legal Representation of the

19  Debtors by Lawrence F. Morrison, Meister, Seelig & Fein, LLP

20  and Sarit Shmulevitz.

21

22  Reply to Motion filed by the Tzamarots.

23

24  Affirmation by Paul Steinberg, Special Counsel.

25

4

1   Application to Employ The Law Office of Linda Tirelli, P.C.,

2   and The Law Offices of Cushner & Garvey, LLP as Atorneys filed

3   by Todd S. Cushner on behalf of Aaron Tzamarot, Karin

4   Tzasmarot.

5

6   Objection to Motion Partial Objection to Retention Application.

7

8   Application to Employ Shmulevitz Law as Attorney Hearing:

9   November 20, 2012.

10

11  Application for Final Professional Compensation for Sarit

12  Shmulevitz, Debtor's Attorney, period: 3/26/2011 to 10/22/2012,

13  fee: $21,525, expenses: $.

14

15

16

17

18

19

20

21

22

23

24

25

Colloquy                                    5

1              THE COURT:  Let me take In re: Tzamarot.

2              MS. SHMULEVITZ:  Good morning, Your Honor.

3              THE COURT:  Good morning.

4              MS. SHMULEVITZ:  How would Your Honor like to

5     proceed?  Would Your Honor like to hear the adversary

6     proceeding or get to the issues in the main case?

7              THE COURT:  Well, who are you, can you state your

8     name for the record?

9              MS. SHMULEVITZ:  Oh, I'm sorry, I am Sarit

10    Shmulevitz.  I have been representing the debtors for about 18

11    months.  And the debtors are looking to substitute counsel.

12             THE COURT:  Who intends to argue the debtor's motion

13    to amend?  Who's going to be arguing that?

14             MS. SHMULEVITZ:  Myself and my colleague, Paul

15    Steinberg.

16             MR. STEINBERG:  Paul Steinberg, 14803 Hillside.

17             THE COURT:  I don't think you have to lean in to it,

18    I think it will pick you up, the microphone.

19             MR. STEINBERG:  As Ms. Shmulevitz indicated, there's

20    a motion to replace counsels.

21             THE COURT:  Right.

22             MR. STEINBERG:  Whichever Your Honor wants to deal

23    with first.

24             THE COURT:  So and you two are the replacement

25    counsel?

Colloquy                                    6

1          MR. STEINBERG:  No, we're the people being replaced.

2          THE COURT:  All right, but you're --

3          MR. STEINBERG:  I have no objection --

4          THE COURT:  But you would be arguing the motion to

5     amend?

6          MS. SHMULEVITZ:  Yes, Your Honor.

7          THE COURT:  All right, so I'd like to hear the motion

8     to amend first.  And then we can deal with the counsel issues.

9     Okay?  Everyone can sit down, you know, until you speak.  And

10    then just say your name and who you're speaking for.

11         MR. STEINBERG:  Yes, Your Honor, on the motion to

12    amend, it's fairly straightforward, at the last proceeding,

13    this Court had indicated that there were what the Court

14    regarded as some deficiencies in terms of the pleading needing

15    to be fleshed out.  I have communicated with my clients.  We

16    have submitted a proposed amended complaint which we feel does

17    address the Court's concerns with regards to particularity,

18    and with regards to making it explicit the conflict in the

19    undisclosed representation.

20         THE COURT:  Okay, well, before we get to Mr. Gruber

21    and his firm, there is an objection to the motion by the Cold

22    Stone parties.  And it seemed to me that was well taken.  I had

23    previously ruled that as to Mishmash and Simply Moving, the

24    complaint was time barred, and I didn't see any change on that.

25    And yet they're still defendants asserting claims against Cold

Colloquy                                        7

1   Stone, et al, the Cold Stone defendants.  So am, I right on

2   that?

3          MS. SHMULEVITZ:  Your Honor, the allegation there is

4   that the Tzamarots are successors in interest to Mishmash and

5   so whether, that's why the allegations remain there.  And to

6   the extent that there's a legal issue there, we submit that

7   that should be dealt with in a substantive motion rather than a

8   procedural motion such as this one.

9          THE COURT:  But I did deal with it in a substantive

10  motion.  The motion to dismiss that I granted back in January I

11  think.  I'm sorry, let me just get the exact date.  Right, May

12  7th, the motion was from January.  I mean it's, as far as Cold

13  Stone and Cold Stone Creamery Leasing and Kabala, there's no

14  claim by Mishmash or Simply Moving.

15         MS. SHMULEVITZ:  We concede that, Your Honor.

16         THE COURT:  Okay.  All right, so, the amendment that

17  asserts claims by them can't be approved against those three

18  defendants.

19         MS. SHMULEVITZ:  Your Honor, if Your Honor would

20  prefer, the complaint can be rephrased such that all of

21  Mishmash's -- in other words, we're looking at it as though the

22  Tzamarots stepping into the shoes of Mishmash.  So all of the

23  claims that actually are alleged by Mishmash would flow to the

24  Tzamarots by virtue of the successor in interest argument.

25         THE COURT:  But if those claims are time barred, it

Colloquy                                                    8

1   doesn't matter if they're successors.  And I also found that

2   they failed to state a claim.  I just, again, this is not the

3   Tzamarots' own claims.  But to the extent that there are claims

4   by Mishmash or Simply Moving, or as successor to Mishmash or

5   Simply Moving, there's nothing in the amended complaint that

6   changes any of the rulings from May 7th.

7          MS. SHMULEVITZ:  Well, Your Honor, let me just get

8   some clarification here.  So, in other words, the Mishmash

9   claims are barred, but the Tzamarots claims are not, because

10  they have been in bankruptcy.

11         THE COURT:  But if the Tzamarots claims are based on

12  the Mishmash claims, if they're literally inheriting the

13  Mishmash claims, as successor in interest, they would be barred

14  too.  Right?  At least there's no allegation as to why they

15  wouldn't be.

16         MR. STEINBERG:  Well, if I may.

17         MS. SHMULEVITZ:  Our position Your Honor, is that

18  since they are successors in interest, the claims went to them

19  are they in bankruptcy.  In other words, we view it as, if the

20  Tzamarots have the right, they have not lost the right to file

21  a claim because they have been in bankruptcy.  Mishmash has

22  lost some rights because their bankruptcy was dismissed.

23         But the rights of Mishmash flowed to the Tzamarots

24  through bankruptcy and so the Tzamarots continue to have some

25  rights.  That is the argument that is being made.

1      MR. FRAME:  Your Honor, William Frame for the Cold

2  Stone defendants.  Just briefly on that issue.  Perhaps if

3  there was an actual transfer and then the Tzamarots filed

4  bankruptcy, I can understand the argument.  But I'm not really

5  understanding how as a successor in interest in the -- why,

6  because they filed bankruptcy?  I still think their claims are

7  barred whether it's couched as the Tzamarots' claim or

8  Mishmash's claim.

9      MS. SHMULEVITZ:  Well, Your Honor, that's a

10 substantive issue.

11     THE COURT:  Look, it's an issue -- you have a

12 complaint that has four plaintiffs in it.  You never

13 distinguish in the complaint as between those four plaintiffs.

14 I've already ruled that two of those plaintiffs don't have

15 claims against these three defendants.  And you still have it

16 in your complaint that they are the claimants.  So it doesn't

17 work.

18     MR. STEINBERG:  Well, Your Honor, just if I may

19 clarify, our amended complaint should have three because in

20 accordance with what this Court had said, we dropped one of the

21 plaintiffs.  So the three plaintiffs would be Aaron Tzamarot,

22 Karin Tzamarot and It's a Mishmash in our proposed amended.  We

23 did pay attention to what the Court had said last time.

24     THE COURT:  You're right, you took out Simply Moving.

25 But you still have Mishmash.  And there's nothing in the

Colloquy                         10

1   complaint asserting why the Tzamarots in asserting Mishmash's

2   claims would not also be time barred, or somehow not bound by

3   the May 7th order which said that Mishmash didn't have any

4   causes or action against the three defendants.

5           MR. STEINBERG:  Well, Your Honor, it would seem that

6   to the extent that, and again, I'm not a bankruptcy specialist,

7   I'm just brought in for the adversary proceeding.  So I may be

8   in error here.

9           THE COURT:  This has nothing to do with bankruptcy.

10          MR. STEINBERG:  But it would seem that to the extent

11  that Tzamarots are successors in interest, to somebody, then

12  they have a right to assert a claim --

13          THE COURT:  It depends --

14          MR. STEINBERG:  And if they're in bankruptcy then it

15  would be stayed.

16          THE COURT:  It depends whether the statute ran before

17  their case commenced or not.

18          MR. STEINBERG:  Well --

19          THE COURT:  But certainly reading this complaint, I

20  had no idea that you were asserting claims of Mishmash.  I

21  assume Cold Stone didn't know either.

22          MR. STEINBERG:  Actually we did put that they were a

23  shareholder and successor in interest.

24          MR. FRAME:  Judge, they also claim there's a breach

25  of contract.  The only contract --

Colloquy                    11

1          THE COURT:  No, that's a separate issue.  All right,

2     you say they're a successor in interest to Mishmash.  I've

3     already ruled the causes of action are dismissed as to

4     Mishmash.  So you need to put something in here as to why,

5     notwithstanding that fact, the Tzamarots are not time barred,

6     or not bound by the dismissal.

7          MS. SHMULEVITZ:  Yes, Your Honor, I understand.  Can

8     we, given Rule 15 --

9          THE COURT:  My practice is not to grant oral Rule 15

10    motions.  So I'll give you 30 days to make a Rule 15 motion.

11         MS. SHMULEVITZ:  Thank you, Your Honor.

12         THE COURT:  On the successor issue.

13         MR. STEINBERG:  Yes, Your Honor.

14         THE COURT:  But you need to take Mishmash out as a

15    plaintiff.

16         MS. SHMULEVITZ:  Yes, Your Honor.

17         THE COURT:  As far as the Cold Stone three defendants

18    are concerned.

19         MR. STEINBERG:  Thank you, Your Honor.

20         THE COURT:  I won't give you leave on that, on any

21    claims by Mishmash.

22         MS. SHMULEVITZ:  Yes, Your Honor.

23         MR. STEINBERG:  Understood, Judge.

24         THE COURT:  Okay, now --

25         MR. STEINBERG:  Does the Court want to deal --

Colloquy                                    12

1        THE COURT:  Now as to the claim against Mr. Gruber

2   and his law firm.  Let me hear that one.  First of all, this

3   also goes back to the order in this case that we're dealing

4   with Mr. Gruber, from May.  I at the hearing dealt with the

5   breach of fiduciary duty claim against him.  And that was not

6   based on either Rule 9 or <u>Iqbal</u>; it was based again on the

7   statute of limitations issue.  And yet the breach of fiduciary

8   duty claim is still in here.

9        MR. STEINBERG:  If I may address that, Your Honor.

10  We had discussed very briefly at the last proceeding, but not

11  really gotten into, the issue of tolling.  The fact is, and I

12  believe it's undisputed from what I can see in the pleadings,

13  that the Tzamarots went to Mr. Gruber.  Mr. Gruber was secretly

14  representing Cold Stone.  The interests of Cold Stone were

15  adverse to that of my client.  And in fact we did discuss that.

16  Your Honor wanted that in the pleadings.  In the amended

17  pleadings we address one of those issues at paragraph 196.

18        I mean, there's a direct pecuniary conflict. Now my

19  clients had absolutely no idea that Mr. Gruber was secretly

20  working for somebody adverse to their interest.  And the

21  argument, and again, Mr. Ked (phonetic) is going to get a

22  chance to speak, so I don't want to too much anticipate the

23  argument, but the reality is, Mr. Gruber had an affirmative

24  duty to disclose that conflict.  He didn't do so.  There was no

25  way my clients could have discovered that.

Colloquy                              13

1            THE COURT:  Okay, so you're arguing tolling on that

2    point.

3            MR. STEINBERG:  Absolutely, Your Honor.

4            THE COURT:  Okay, --

5            MR. STEINBERG:  And we had discussed and I --

6            THE COURT:  So what is Mr. Gruber's response on that?

7            MS. IDAHOSA:  Good afternoon, Judge, it's Evon

8    Idahosa, for the Gruber defendants.  My recollection, Judge, is

9    that you specifically addressed the tolling issue at the last

10   appearance in April.  And found that the tolling provision did

11   not apply under these circumstances in dismissing that cause of

12   action.  You specifically found, from what I recall from my

13   notes is that, there was no benefit of the tolling provision in

14   connection with this cause of action.

15           THE COURT:  Well, that's true, but that was based on

16   a different complaint, which I think only conclusorily said

17   that Mr. Gruber and his firm did not inform the Tzamarots of a

18   potential conflict of interest without identifying what it was

19   or -- those allegations are still in paragraphs 129 and 130.

20   But they have now added the allegations that counsel was

21   referring to --

22           MS. IDAHOSA:  About the secret representation, or the

23   dual representation.

24           THE COURT:  Right, the conflict was actually with

25   Cold Stone.

1      MS. IDAHOSA:  Right, but that's, I mean, there's no,

2   absolutely no basis, for that contention.  In fact we attach as

3   one of the exhibits to our motion, Exhibit G, an email from the

4   plaintiffs to a representative of Cold Stone where they

5   indicate that they've had a change of heart and their intention

6   is to proceed with Mr. Gruber, who they specifically referred

7   to as the Cold Stone attorney.

8      THE COURT:  Well, it's clear it's acknowledged in the

9   complaint that Cold Stone recommended him.  It's not clear to

10  me that they knew that he was actually working for Cold Stone,

11  i.e., you know, Cold Stone may have a list of people that they

12  trust to do closings for their franchisees.  But I don't think

13  you should be able to, as a franchisee be, infer from that that

14  those people actually are working for Cold Stone.

15     MS. IDAHOSA:  I understand your point, Judge, but I

16  think there's sufficient documentary evidence that makes it

17  very clear.  I mean, even if that were the case, I mean the

18  fact remains that their interests, for a conflict of interest

19  you still have to show that that caused substantial --

20     THE COURT:  Well, let's move to that point, because I

21  think the point goes both to the fraud claim and the breach of

22  fiduciary duty claim.  I just want to deal with the statute of

23  limitations issue first.  And it seems to me that on the

24  statute of limitations point, this complaint has been

25  sufficiently amended so it's not futile.

Colloquy                              15

1            That still leaves the issue, which I think applies

2      both to the fraud claim and the breach of fiduciary duty claim,

3      which is does it really state a claim.  Assuming now, and of

4      course you can show via the facts later, I guess, in your

5      motion to dismiss or summary judgment basis, that tolling

6      shouldn't apply.  But it's really, at that point I think it's

7      really a fact issue.

8            But assuming for the moment that tolling would apply,

9      the claim states enough facts to permit accepting those facts

10     as true, that the limitations period would be tolled.  Could

11     you just summarize your argument that the complaint does not

12     state sufficient facts to establish either a fraud or breach of

13     fiduciary duty claim?

14            MS. IDAHOSA:  All right.  I'll just continue on the

15     breach of fiduciary duty then.  Where the breach of fiduciary

16     duty is based on a conflict of interest as is the case here,

17     you have to show that the conflict of interest was a

18     substantial factor in the loss.  There's no allegation here

19     that the conflict of interest in fact caused the loss which the

20     plaintiffs are claiming.

21            In fact our position that even if this secret

22     representation was not disclosed, the interest of Cold Stone

23     and the plaintiffs were aligned because the whole point was to

24     try to get the most favorable lease possible.  And so if --

25            THE COURT:  The issue is, favorable for whom?

Colloquy                                    16

1        MS. IDAHOSA:  Well, favorable, the plaintiffs were

2    well aware of all the decisions that were being made.  I mean,

3    there's loads of communication, emails back and forth that,

4    some of which we attached to our motion that indicate that they

5    approved the lease as it was being entered into.

6        But essentially what they attempt to do is that they

7    attempt to argue that my client should have provided with

8    business advice as to a decision that they had made a year

9    prior to his retention.  The case law does not require, does

10   not affirmatively require my client to do that under the

11   circumstances.

12       It's our position that they had already made the

13   decision and now they're essentially attempting to shift the

14   blame over to Mr. Gruber, for a decision that they made prior

15   to his involvement in the case.

16       With regard to the fourth claim, it's our position

17   that there's the allegations that they essentially rely on were

18   made to alleged representations that were made by the Cold

19   Stone defendants regarding the profitability of this business.

20   I mean, there's no representation by my client whatsoever,

21   there's no way that there can be justifiable reliance on a

22   representation that was never made in the first place.

23       So I can obviously continue and elaborate further.

24       THE COURT:  Well, let me, on the fiduciary duty

25   point, he has a duty of loyalty and a duty of care, right, in

Colloquy                                    17

1   respect to the matter in which he's been retained?

2         MS. IDAHOSA:  Correct, which was simply just to

3   negotiate the lease.

4         THE COURT:  I understand.

5         MS. IDAHOSA:  Right.

6         THE COURT:  And as far as the duty of care is

7   concerned, I guess I understand your argument.  As far as the

8   duty of loyalty is concerned, doesn't that include the full

9   disclosure of who he's representing?

10        MS. IDAHOSA:  It's our position that that was very

11  clear, Judge.  I mean, I think we, I know that you disagree on

12  just basically what you've previously noted.  But I think that

13  it's clear just from at least, if you look at the November

14  email that we attached, where the plaintiffs say we're going to

15  go with Mr. Gruber, the Cold Stone attorney.  I mean, it's

16  clear they're saying, you know, we're relying on him.  Actually

17  we're accusing him because of his experience with Cold Stone.

18        THE COURT:  All right.  To me I think that, at least

19  as far as the duty of loyalty is concerned, there's a

20  sufficient level of facts asserted in this amended complaint to

21  raise a potential claim against him, in that he, it's alleged

22  with some real facts behind it as opposed to just a conclusory

23  allegation that he didn't disclose "a conflict," that in fact

24  he didn't disclose the conflict that he had in that he was

25  representing Cold Stone; in fact it's alleged that he didn't,

Colloquy                                    18

1    he told Cold Stone not to disclose that fact to the Tzamarots.

2         Now, again, I take the allegations in the complaint

3    to be true.  You can show them not to be true as part of

4    factual development of the case.  But it appears to me on that

5    duty, the complaint states a cause of action.  What the damages

6    might be as a result of that duty, you know, remain to be seen.

7         As to the fraud point, what fraud by Mr. Gruber is

8    alleged here that caused the damages?

9         MR. STEINBERG:  As noted here, Your Honor, Mr. Gruber

10   did dissuade the plaintiffs from other potential sites,

11   discussed why those weren't suitable. And that's at paragraph

12   194.  Essentially, I think, and I don't want to jump ahead to

13   the next matter before this Court.  But I think it is

14   abundantly clear that the Tzamarots are people that had they

15   known there was any kind of conflict, wouldn't have dealt with

16   Mr. Gruber.

17        THE COURT:  Well they allege that.  I mean they

18   allege that, that's fine.

19        MR. STEINBERG:  Now --

20        THE COURT:  But that's on the fiduciary duty point.

21   I'm trying to, -- which you already won on.  So you don't need

22   to argue that.

23        MR. STEINBERG:  I understand, but I'm trying to get

24   there, Your Honor, maybe not terribly artfully.

25        THE COURT:  Okay.

Colloquy                                    19

1           MR. STEINBERG:  But I'm getting there.

2           THE COURT:  All right.

3           MR. STEINBERG:  One of the issues here is that my

4    clients allege that Mr. Gruber made affirmative representations

5    to them that did get into the business.

6           THE COURT:  Where?  Where?  That's what I'm looking

7    for.

8           MR. STEINBERG:  He dissuaded them from other --

9           THE COURT:  That's 198, right?

10          MR. STEINBERG:  Well, 194.

11          THE COURT:  Well, 194 is not, that's, no that just,

12   no it's 198.  "And several times Gruber dissuaded plaintiffs --

13          MR. STEINBERG:  I'm sorry, are you, you're looking at

14   the original or the, I thought we were dealing on the proposed

15   amended.

16          THE COURT:  No, I'm looking at the amended one.

17   Proposed amended complaint, 198, "Several times Gruber

18   dissuaded plaintiffs from other potential sites and discussed

19   why those sites were not suitable for an operation of a Cold

20   Stone."

21          MR. STEINBERG:  Oh, yes, Your Honor, I'm sorry.  I

22   was looking off an earlier draft.

23          THE COURT:  Okay.

24          MR. STEINBERG:  My apologies.

25          THE COURT:  And then it alleges that he got two

Colloquy                        20

1    percent of the gross value of the lease payments.  I'm sorry,

2    that Cold Stone got two percent of the value of the lease

3    payments.  I guess the inference there is that, you know, the

4    higher the lease the more Cold Stone would have gotten.

5            MR. STEINBERG:  And actually, Your Honor, it's really

6    more than two percent because of the fact that that was paid

7    up-front.  So there was no discount for present value.

8            THE COURT:  Right.  So I understand that normally a

9    lawyer is not charged with fraud committed by his client, even

10   if he knows.

11           MS. IDAHOSA:  Now he is representing Cold Stone.  I

12   mean, you can't really have it both ways I suppose.

13           THE COURT:  Well, no, let me finish.  Normally a

14   lawyer is not charged with the fraud committed by his client.

15   So if in fact it was the case that he was representing Cold

16   Stone, as alleged in this complaint, it wouldn't matter if it

17   was just Cold Stone that was defrauding them and not Gruber.

18   Again, I'm separating out fraud from breach of fiduciary duty.

19           MS. IDAHOSA:  Right.

20           THE COURT:  But it's alleged here that he himself

21   was, well, I don't know, I mean I still don't know what his

22   fraud was.  You're basically saying that somehow he, because he

23   was more than just a lawyer that he was providing business

24   advice that he should be charged with Cold Stone's fraud?

25           MR. STEINBERG:  Well --

Colloquy                                              21

1           THE COURT:  I mean, that he had an obligation to

2     disclose?

3           MR. STEINBERG:  If I may back up a second.  And

4     again, I'm not familiar as far as Federal.  But in New York,

5     it's very clear the two prongs, the second prong, you get

6     written consent of both clients which was not done here.  They

7     never knew.  Had they known, first of all, had they known that

8     Mr. Gruber was also working on behalf of Cold Stone, they would

9     have filtered what he said appropriately.  They believed him.

10    When he said look, this is not appropriate, this is not

11    appropriate, don't do this site, I want you to do this site.

12    They relied on that.

13          THE COURT:  But how is that a fraud?  I'm

14    distinguishing between fraud and breach of fiduciary duty.

15    How is that a fraud?  I don't see how he's defrauded them.

16          MR. STEINBERG:  Because of the fact that this

17    particular -- Gruber represented that he had knowledge as to

18    which was a better site.  Now I think that's idiotic.  I never

19    do that with clients.  But the fact is, in this case that was

20    done.  And he explicitly tied it to his knowledge of Cold

21    Stone.  And point of fact, the site was, apart from being a

22    very poor site, the other thing is that one of the issues, the

23    immediate proximate cause of my clients going out of business

24    was the fact that Mr. Gruber's client, Cold Stone Kahala, took

25    rent money from the Tzamarots, did not pay the landlord, and

Colloquy                                    22

1    the landlord evicted them.

2          THE COURT:  But what was Gruber's fraud?  What was

3    the fraud Gruber committed?

4          MR. STEINBERG:  Insofar as he made statements as to

5    the fact that this potential site and not another one, and

6    didn't disclose his interest.  I don't know why Gruber found

7    this particular site and not others.  And again, that's

8    something we've got to look at in discovery.

9          THE COURT:  It's not even stated though that that was

10   a fraudulent statement.  That one was more suitable than the

11   other.

12         MR. STEINBERG:  Well, it's hard to tell until you,

13   until we know why --

14         THE COURT:  I know, but that's what --

15         MR. STEINBERG:  I mean to the extent that my clients

16   are coming and saying, I want this site or that site.  And Mr.

17   Gruber is saying, no, this is my business, I know what I'm

18   doing, don't select that particular site.  As I said, I don't

19   do that much --

20         THE COURT:  But you don't say it was a fraud.  The

21   complaint doesn't say that was a fraudulent statement.  He may

22   have been right as to that advice.

23         MR. STEINBERG:  Well, given the fact that there's an

24   undisclosed conflict, we don't know why --

25         THE COURT:  That's a separate issue.  That's a

Colloquy                                23

1   separate issue.

2          MR. STEINBERG:  And certainly in discovery maybe we

3   can find out why --

4          THE COURT:  But Rule 9, you're supposed to state what

5   the fraudulently statement was.  I can't tell from reading this

6   complaint what fraud he committed.  I see you're alleging Cold

7   Stone made, and other agents of Cold Stone made,

8   representations about profits and losses and, but I don't see

9   him making anything, other than concealing his representation,

10  which I think is, you state a fiduciary duty claim.  But I

11  don't see what fraud you've alleged he's committed.

12         MR. STEINBERG:  I'm not entirely sure, like I said,

13  I've been doing this for a long time, both as an attorney, as a

14  business person, I don't know why he thought he was qualified

15  to pick one site over the other.  There was obviously some

16  reason why he picked this particular site.

17         THE COURT:  Okay.

18         MR. STEINBERG:  And he also did not disclose, in

19  terms of his representation, he didn't disclose this bit about

20  them taking the rent, that his client was going to take the

21  rent and -- which is what happened.  His client took the rent,

22  did not remit it to landlord, and as a result, I mean, Cold

23  Stone took it, his client --

24         THE COURT:  But you don't allege that he made any

25  representations to the contrary on that point.

Colloquy                                    24

1          MR. STEINBERG:  Well, --

2          THE COURT:  I mean, that was just a contract.  Right?

3          MR. STEINBERG:  Well, if he were properly

4    representing the Tzamarots he would do what any lawyer does,

5    and say look, if you're dealing with a matter where you're

6    essentially a sublessee, the lawyer does have a responsibility

7    to go into the legal ramifications, especially where his other

8    client --

9          THE COURT:  I understand that.  But that's the breach

10   of fiduciary duty point.   It's not a fraud.  I don't see any

11   fraud here alleged by Gruber, that Gruber committed.  I just

12   don't.  And it doesn't, it's not an excuse to say that we'll

13   learn that in discovery, because Rule 9 is, requires you to

14   allege it in the first place with particularity.  So I just

15   don't, I don't see a fraud claim here.  I just don't.

16         And it's the second time I don't see it.  I see a

17   claim based on his stating that he doesn't work for Cold Stone.

18   Okay, but as far as anything other than his -- in respect of

19   his allegation as to who he was representing, I don't see it.

20   I don't see any other fraud claim.  Unless you can point me to

21   one.  I don't think you're going to.

22         I also frankly don't see proximate cause.  I mean 205

23   doesn't actually say, it cuts off in mid sentence.   So I don't

24   see a sustainable fraud claim here.  So, it seems to me that

25   with regard to that count, as opposed to the breach of

Colloquy                         25

1   fiduciary duty count, the motion should be denied.

2          And I guess since I'm giving you 30 days leave to

3   make a motion under Rule 15 on the other defendants, I'll give

4   you 30 days on this.  But you really need to state the who,

5   what, where, and when of the fraud that he committed.

6          MR. STEINBERG:  Understood, Your Honor.

7          THE COURT:  It doesn't have to an affirmative fraud.

8   It can be, you know, a fraud of omission.  But you have to

9   actually believe and do the research that he has a duty to

10  disclose.  And for lawyers, that duty, where you're

11  representing another party, is different than when you're

12  representing your client.  If you know something that the

13  client should know, and you don't disclose it, then, you know,

14  there's a duty to disclose.  I don't think you allege that

15  here.

16         You need to actually allege that he had -- if you're

17  going to allege a failure of a duty to disclose, you have to

18  say what he knew and that he didn't tell them.

19         MR. STEINBERG:  And we'll take care of -- I know we

20  discussed that briefly at the first, and we didn't go into it

21  because we were going to -- but we'll take care of that.

22         THE COURT:  Okay.  All right.

23         MS. IDAHOSA:  Judge, I just want to note my objection

24  to that.  Just because, and they've already had, you know, this

25  was since May they were supposed to have done this.

Colloquy                                      26

1            THE COURT:  I understand that.

2            MS. IDAHOSA:  And it's giving them yet another bite

3     at the apple.

4            THE COURT:  It's a close call, but I think

5     particularly given the new specific allegations about who he

6     is, that he was in fact working for Cold Stone, I'll let them

7     make the motion.  If I deny it based on my review of their

8     complaint and your objection then it's highly unlikely I'll

9     grant any more time, any more opportunities to move to amend.

10           MS. IDAHOSA:  Thank you.

11           THE COURT:  So, I'm going to ask counsel for Cold

12    Stone to prepare the first order and counsel for Mr. Gruber to

13    prepare the second order.  You don't need to settle it on the

14    Tzamarots, but you should email it to their counsel, whichever

15    is going to be new counsel now, based on my review of the

16    papers in connection with the next matter.

17           And there's 30 days to make that motion, in each

18    case, and the complaint needs to be attached with a black line,

19    a black line complaint needs to be attached showing the changes

20    from the prior proposed amended complaint.  So the second

21    proposed amended complaint is to be attached in the black line

22    format showing changes as against the first proposed amended

23    complaint.

24           Okay.  Now, as far as the motions on the attorneys

25    are concerned, I guess I had a couple of questions first.  Who

Colloquy                    27

1   has been paid so far during the case?  Anyone?

2           MS. SHMULEVITZ:  Myself, Your Honor.  I was paid at

3   the very beginning.  I was paid $10,600.

4           THE COURT:  You mean before the case started?

5           MS. SHMULEVITZ:  The case, what happened in this case

6   Your Honor, is that this case had been pending since 2009.  I

7   took over, I want to say sometime in 2011.  At that point I was

8   so, so this is sort of once the case was already pending, I was

9   paid $10,600 at the very beginning, which I understood to be

10  third party funds.

11          THE COURT:  All right, but there was no fee

12  application?

13          MS. SHMULEVITZ:  There was no fee application because

14  I was under the understanding that if it's third party funds,

15  you don't need a fee application.  Now that I've, you know, at

16  this point I've submitted both a fee application that goes back

17  to that date, to, and actually includes fees of about $50,000

18  of which --

19          MR. STEINBERG:  And if I may just clarify, Your

20  Honor.  My understanding is that two prior attorneys were paid

21  -- the Richard Rosen Law Firm and Mr. Morrissey.  My

22  understanding, Ms. Shmulevitz has spoken with them, my

23  understanding is that they're also saying they were informed it

24  was third party funds.  There was also an accountant that was

25  paid.  I don't believe anyone has spoken to him.

Colloquy                                    28

1              So we're dealing with four attorneys and an

2      accountant from my understanding.

3              THE COURT:  And who was retained by an order of the

4      Court?

5              MS. SHMULEVITZ:  Absolutely no one, Your Honor.

6              THE COURT:  No one made a motion to be retained?

7              MS. SHMULEVITZ:  No, Your Honor.  Let me just, if I

8      may add, there is a motion pending for Mr. Steinberg.

9              THE COURT:  Right.

10             MS. SHMULEVITZ:  Which is before the Court today.

11     And then I've got my motion as well on the docket.  That's the

12     case.  Larry Morrison did not file a, you know, that's

13     basically it, Your Honor.

14             THE COURT:   And has Morrison been paid anything?

15             MS. SHMULEVITZ:  Yes, Your Honor, he was paid,

16     according to these allegations, he was paid $18,140.26.

17             THE COURT:  Okay, has the U.S. Trustee had a chance

18     to look into this yet?

19             MR. MORRISSEY:  Your Honor, for the record, Richard

20     Morrissey for the U.S. Trustee.  There's been a flurry of

21     allegations made on all sides.  First of all, the payment that

22     Ms. Shmulevitz just referred to to her own firm, my

23     understanding, and obviously she can correct me if I'm mistaken

24     on this, is that that payment, and I put that term in quotation

25     marks, was a retainer, a third party retainer.  Not a payment

1   on account of an allowed claim.

2          THE COURT:  Right. But there's no retention

3   applications for any of the four counsel for the debtors in

4   this case?

5          MR. MORRISSEY:  Your Honor, my recollection is that

6   for Mr. Steinberg, there was an application filed long ago.

7   But not for the others, including the accountant that Mr.

8   Steinberg mentioned.  I am not aware of any actual payment made

9   on account of services rendered that did not take the form of a

10  retainer in this case.  In other words, there was no payment in

11  lieu of fee application as far as I'm aware of.

12         THE COURT:  Well, what is the Trustee's view on these

13  nunc pro tunc retention applications?

14         MR. MORRISSEY:  Your Honor, as the Court knows under

15  the Second Circuit, there has to be an extraordinary

16  circumstance that would permit nunc pro tunc relief of this

17  kind.  Now having said that, Mr. Steinberg did in fact do an

18  application quite a long time ago.  That is to say an

19  application was filed for him.  But the nunc pro tunc relief in

20  terms of retention leading to an eventual payment, because Ms.

21  Shmulevitz did in fact do a fee application here, theorizing

22  here, and Ms. Shmulevitz can again correct me if I'm wrong on

23  this, is making what amounts to a quantum meruit claim for the

24  services that she has rendered.  Albeit in a heavily discounted

25  amount.

Colloquy                    30

1        So the U.S. Trustee generally would not go along with

2   nunc pro tunc retention of this kind, unless the fee applicants

3   show extraordinary circumstances.  The other odd fact here, and

4   I don't think I'm ever going to run out of odd facts in this

5   case.  But the odd fact with respect to the retention

6   application that was recently filed, is that it was not

7   actually filed by the debtors.  It was filed by and on behalf

8   of Ms. Shmulevitz herself.  And that too is very

9   unconventional.

10       THE COURT:  Okay, and am I right, there are no time

11  entries on the fee application?

12       MR. MORRISSEY:  There are time entries, Your Honor.

13       THE COURT:  There are?  My copy doesn't have them.

14       MS. SHMULEVITZ:  May I pass a copy to Your Honor?

15       THE COURT:  Oh wait, I'm sorry.  I do have them.

16       MS. SHMULEVITZ:  The other thing, Your Honor, and

17  this is something I just want to bring up.  There was a

18  threshold issue here where the reason that no applications were

19  filed was because people were under the impression that these

20  were third party funds coming.  So, I did not believe that, if

21  I'm getting a retainer that's coming from somewhere else, then

22  and I never, ever, ever have filed any sort of fee application

23  or asked for any funds since that time.

24       And same with the accountant.  The accountant was,

25  the debtors were explicitly told they're not allowed to pay any

Colloquy                                    31

1   funds out of the estate.  Everything must be third party funds.

2   They went and found an accountant who worked very long hours on

3   their behalf, and was told that they are being paid by third

4   party funds.  And Mr. Steinberg is under the same category.

5           Now what happened is, I filed a motion a long time

6   ago to retain Mr. Steinberg because my concern frankly was, I

7   was more concerned with just getting him on the case so that

8   they were -- there was a lot of pressure to get the Cold Stone

9   matter heard.  So I wanted to make sure he was you know,

10  properly on the case to argue it.  And the understanding was

11  that it was third party funds.  And then later on, so and I've

12  amended that and that's where it stands, Your Honor.

13          MR. STEINBERG:  And Your Honor --

14          THE COURT:  Where did the money come from?

15          MS. SHMULEVITZ:  Good question, Your Honor.

16          MR. STEINBERG:  Oh, and Your Honor, if I may --

17          THE COURT:  So you don't know where the money came

18  from?

19          MS. SHMULEVITZ:  I understood the money came from,

20  there's an agreement that was signed way at the beginning of

21  the case, when I first took on the matter, because it was Larry

22  Morrison's care.  The debtors came to me and said, we need

23  things, the trustee is threatening to dismiss this case.

24  There's no operating reports. This case is a mess, we need you,

25  we need you, we need you.  I said, look, -- and we have third

Colloquy                                    32

1   party funds from my mom in Israel.  So we signed an agreement

2   --

3            THE COURT:  What, were you paid by check?

4            MS. SHMULEVITZ:  I was paid by check.  I believe, I

5   don't believe that I was --

6            THE COURT:  And whose check was it?

7            MS. SHMULEVITZ:  I don't remember, Your Honor.

8            THE COURT:  I'm not going to rule on this motion

9   right now.  Any of these motions, except the motion to

10  withdraw.  There are like ten, there are less than ten, but

11  there are like four or five enormous problems with both of

12  these applications.  I mean, it's just, it's a disaster.

13           MR. STEINBERG:  And Your Honor, my understanding is

14  that the two other attorneys and the accountant may not know

15  about this at all.  The other attorneys, the two law firms, the

16  two different law firms have been notified, but I don't believe

17  that they've been given official notice of what's in here.

18           THE COURT:  Well, you know, there's clearly a basis

19  to ask for disgorgement of fees, if the fees came from the

20  debtors, or if, because no one was retained.  Now there may be

21  exceptional circumstances here, although if there was a basis

22  to know to retain Mr. Steinberg, and certainly Morrison appears

23  in court all the time, and purports to know what he's doing, I

24  don't know why there weren't retention orders for everyone

25  else, but there weren't.

Colloquy                                    33

1          And all of the issues as to whether the money was

2    coming from, then could have been dealt with.

3          MS. SHMULEVITZ:  Your Honor, if I may interrupt

4    quickly.  I mean, just, I don't know if this makes a

5    difference, but I filed a notice, I should have known better,

6    but I filed a notice of appearance under the understanding that

7    that's all I needed to do, or a substitution of counsel.

8          THE COURT:  But no, it's clearly not what you need to

9    do, particularly when you say you prepared something for Mr.

10   Steinberg to be retained in March.

11         MS. SHMULEVITZ:  Well, because I come from a

12   different, I worked with Larry Morrison and this prior firm, so

13   I saw it as just almost a transition from one firm to the next.

14         THE COURT:  Well, that's just wrong.  I'm sorry.  And

15   you know it's not hidden in the Bankruptcy Code.  And if you

16   worked with Morrison, you could have asked him since he's in

17   court all the time.  So I'm not going to rule on this now.  I

18   may never rule on it.  But I will grant the motion to be

19   relieved as counsel.

20         MR. STEINBERG:  And Your Honor --

21         THE COURT:  We can schedule a hearing on the

22   disgorgement motion and we'll have the hearing on the retention

23   applications and the fee applications at that time.  But you

24   need to serve the disgorgement motion on all the professionals

25   who you're seeking to have the money disgorged by.

Colloquy                                          34

1          MS. SHMULEVITZ:  Your Honor, does it make a

2     difference, out of curiosity, whether the parties were told

3     that these are third party funds?  I mean --

4          THE COURT:  The Bankruptcy Code is crystal clear, to

5     be retained as a professional for the estate, you have to make

6     a motion under Section 327(a) of the Bankruptcy Code,

7     disclosing all of you potential conflicts and whether you have

8     any interest adverse to the estate.  As part of that process,

9     as Mr. Morrissey would tell you, you have to disclose where you

10    got any money from.  Because that's a potential conflict.  And

11    there's something called a Lar Dan (phonetic) affidavit that is

12    a matter of practice in this court, which Mr. Morrison knows

13    full well, since he frequently submits them, where the third

14    party acknowledges that although they're giving money there is

15    no duty owed to them.

16         MS. SHMULEVITZ:  Judge.

17         THE COURT:  It's crystal clear.  And that leaves

18    aside any issue about what people actually were told or weren't

19    told, or where the money was actually coming from.  I'll hear

20    all of that when I have a proper hearing on the 329 motion,

21    which is how the motion should be characterized, for

22    disgorgement.

23         I think, Mr. Morrissey, you should have a sit down

24    talk with Lawrence Morrison.  All right?  Generally, about how

25    he conducts these cases.

Colloquy                                          35

1        MR. MORRISSEY:  Your Honor, just for the record, a

2   couple of minute ago Your Honor referred to the time records.

3   And in the time records, there actually is a reference to the

4   drafting of a Lar Dan affidavit in this case back in January.

5        THE COURT:  All right.

6        MS. SHMULEVITZ:  What happened, Your Honor, I don't

7   know if it's something, you know, I'll just take two more

8   seconds.  Basically what happened was, I was under the

9   understanding it's a third party funds.  In the course of

10  drafting my own retention and Mr. Steinberg's retention, it

11  became apparent that what the Tzamarots characterized as third

12  party funds were in fact not what, it's --

13       MS. TZAMAROT:  Judge, I'm Karin Tzamarot.

14       THE COURT:  It doesn't matter.  I'll hear all of this

15  on a proper evidentiary record at the adjourned hearing on your

16  applications, both of your applications, and on the hearing on

17  the 329 motion for disgorgement, which needs to be served with

18  the proper notice and coordinates so the hearings are on the

19  same day.

20       MR. STEINBERG:  And Your Honor, where does that --

21       THE COURT:  You're relieved as counsel, both of you.

22       MR. STEINBERG:  Thank you.

23       THE COURT:  You could submit that order without

24  prejudice to any other rights of the debtors or the debtors'

25  creditors may have.

Colloquy                                      36

1          MS. SHMULEVITZ:  Thank you.

2          MS. TIRELLI: Your Honor, just for the record for

3    appearances, Linda Tirelli of Harvey, Tirelli and Cushner, on

4    behalf of the Tzamarots.

5          THE COURT:  Okay.  And I assume that you all are

6    going to make -- maybe you've already made, an application to

7    be retained?

8          MS. TIRELLI:  Your Honor, we have, and it's actually

9    on the docket today.  And I thought that you just granted that.

10          THE COURT:  All right, that's fine, I did --

11          MS. SHMULEVITZ:  No, Your Honor, that was not

12    granted, I mean, did you grant the $20,000 retainer?  I don't

13    know that you did.

14          MS. TIRELLI:  Your Honor, we've not been paid a

15    single dime, okay we've asked to be brought on as counsel to

16    represent the Tzamarots moving forward.

17          THE COURT:  All right, I didn't see any objection to

18    that application.

19          MS. SHMULEVITZ:  There was an objection, Your Honor.

20    The Tzamarots as far as I know, don't have the bank account,

21    they owe a lot of money to professionals.  I gave then --

22          THE COURT:  No they don't.  They do not, because I

23    have not awarded it. In fact the professionals may owe money to

24    the estate.

25          You're retained.

Colloquy                                          37

1              MS. TIRELLI:  Thank you, Your Honor.

2              THE COURT:  I've reviewed the application.  Obviously

3    the retainer is not going to be paid.  It's just sitting there.

4              MS. TIRELLI:  Your Honor, we know the rules.

5              THE COURT:  It would be applied, if ever, to the

6    first allowed fees.

7              MS. TIRELLI:  Thank you, Your Honor.

8              THE COURT:  There's one other matter on the calendar,

9    which is the pretrial on the Lexus lawsuit.  Is counsel here

10   on that?

11             MS. TIRELLI:  Your Honor, prior to being retained we

12   did not look into any of the further adversary proceedings

13   against Lexus.

14             THE COURT:  There's a lawsuit against some used car

15   dealership.

16             MS. TIRELLI:  We will certainly take care of that

17   going forward.  But I'm unaware of --

18             THE COURT:  Can we reschedule the pretrial

19   conference?  There's been no answer.

20             MS. TIRELLI:  Okay.

21             THE COURT:  But I would have to have an inquest on a

22   default judgment as to the damages: it's not clear to me what

23   the damages will be.

24             MS. TIRELLI:  Okay.

25             THE COURT:  If basically, the allegation is that this

                              Colloquy                           38

1   │ used car dealer sold the Tzamarots a pig in a poke.

2   │          MS. TIRELLI:  Right.

3   │          THE COURT:  And they haven't answered.  I mean, it's

4   │ not even clear to me whether they've been served.

5   │          MS. TIRELLI:  Your Honor, we will clear it up.

6   │          THE COURT:  Okay, so if you would just get a pretrial

7   │ conference.

8   │          MS. TIRELLI:  Will do, thank you very much, Judge.

9   │          THE COURT:  Okay.

10  │               *          *          *

11  │          C E R T I F I C A T I O N

12  │

13  │      I, Patricia Poole, court approved transcriber, certify

14  │ that the foregoing is a correct transcript from the official

15  │ digital audio recording of the proceedings in the above-

16  │ entitled matter.

17  │

18  │ _____

19  │

20  │ /S/PATRICIA POOLE                          1/14/13

21  │ TERRY GRIBBEN'S TRANSCRIPTION SERVICE

22  │

23  │

24  │

25  │